C.O. BUD COPP; John Hewitt; Jim Rogers; and John Rogers, Appellants (Defendants),

v.

Bryan Thomas REDMOND and Robbin Lee Redmond, Appellees (Plaintiffs).

No. 93-8.

Supreme Court of Wyoming.

Sept. 3, 1993.

Cameron Walker, Patrick T. Holscher and William S. Bon of Schwartz, Bon, McCrary & Walker, Casper, for appellants.

Gary L. Shockey, Heather Noble and Robert R. Rose of Spence, Moriarity & Schuster, Jackson, for appellees.

The Petroleum Ass'n of Wyoming, The Wyoming Mining Ass'n, The Wyoming Trucking Ass'n, the National Federation of Independent Businesses, The Wyoming Lodging and Restaurant Ass'n, The Wyoming Auto Dealers Ass'n, The Wyoming Ass'n of Commerce and Industry, Coastal Chem, Inc., Sinclair Oil Corp., Little America Refining Co., The FMC Wyoming Corp., and Rissler & McMurry Corp.: Patrick R. Day, P.C., of Holland & Hart, Cheyenne, amici curiae.

Richard E. Day and Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, amicus curiae of Pacificorp.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Answering a certified question of law, we hold that for claims accruing between July 1, 1987, and February 18, 1993, culpable negligence is the degree of negligence that an injured employee must prove against a co-employee in an action to recover damages for personal injury suffered in a work-related accident.

## BACKGROUND

Brian Redmond, an employee of Jim's Water Service, was seriously injured on May 3, 1988, when he was struck, knocked to the ground and run over by a 75,000 pound 1981 Kenworth "slickback" truck operated by C.O. Bud Copp, a supervising co-employee. At the time of Redmond's injury, Redmond, Copp, and several other co-employees were involved in moving a rig from a storage yard to a drilling site southwest of Gillette, Wyoming. In a personal injury action to recover damages, Redmond and his wife sued Copp and several other co-employees alleging negligence, gross negligence, and culpable negligence.

The instant case was filed in 1988, but was held in abeyance pending this court's final decision upon the rehearing of *Mills v. Reynolds*, 837 P.2d 48 (Wyo.1992). In *Mills* this court held that the Wyoming legislature transgressed constitutional limi-

tations by its 1986 repeal of what has become known as the "culpably negligent" rule. That rehearing decision generated an inquiry whether the applicable standard for such cases after the effective date of the 1986 amendment[1] should be a revival of the "culpably negligent" standard, or a simple negligence standard.

## CERTIFIED QUESTION

After the *Mills* decision was released, proceedings in this matter resumed, and the district court certified the following question for review pursuant to WYO. R.APP.P. 11:

1. When the Wyoming Supreme Court declared the joint employee immunity created by W.S. § 27–14–104(a) to be unconstitutional in *Mills v. Reynolds*, 837 P.2d 48 (Wyo.1992), did that decision enable recovery in co-employee cases pursuant to common law and *Markle v. Williamson* [518 P.2d 621 (Wyo.1974)], to-wit: for ordinary negligence, or did it revive repealed 1977 W.S. § 27–12–103(a), so as to permit tort recovery between co-employees covered by the Wyoming Worker's Compensation Act only when the defendant co-employee is chargeable with culpable negligence? If neither of these positions is correct, then:

2. What is the standard for recovery between such co-employees?

By order issued on January 13, 1993, the court agreed to review the certified questions.

## ANALYSIS

Before its repeal in 1986, WYO.STAT. § 27–12–103(a) (1983) provided:

(a) The rights and remedies provided in this act for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, *or his employees acting within the scope of their employment unless the employees are culpably neg-*

*ligent,* but do not supersede any rights and remedies available to an employee and his dependents against any other person.

(Emphasis added).

In the *Mills* decision, the court recounted the divers changes this provision has undergone in the years both before and after 1986. Effective February 18, 1993, this provision now reads:

§ 27–14–104. **Exclusive remedy as to employer; nonliability of coemployees; no relief from liability; rights as to delinquent or noncontributing employer.**

(a) The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer and any joint employer making contributions required by this act, *or their employees acting within the scope of their employment unless the employees intentionally act to cause physical harm or injury to the injured employee,* but do not supersede any rights and remedies available to an employee and his dependents against any other person.

WYO.SESS.LAWS, ch. 47, § 1 (emphasis added).

The task of this court is to settle what standard applies to such cases between the July 1, 1987 effective date of the repeal of the "culpable neglect" language and the most recent amendment which went into place on February 18, 1993. Our decision today does not construe the language which is now in place. The effect of our decision in *Mills* was simply this: For the purpose of suits, such as the instant case, the language, "or his employees acting within the scope of their employment unless the employees are culpably negligent," which appeared in § 27–12–103(a) is revived and governs all such cases for that time period. *See Morris v. Smith*, 837 P.2d 679, 682 (Wyo.1992).

---

**1.** WYO.STAT. § 27–14–104(a) is located in Section 3 of the 1986 Session Laws. As provided in

Section 6 of the 1986 Session Laws, Section 3 became effective July 1, 1987.

In determining the status of the law when a statute is declared unconstitutional following amendment, we found other authorities in support of the result we reach in this case. A California case states it simply: "[T]he constitutional invalidity of amendatory legislation does not affect the validity of preceding enactments." *Valdes v. Cory*, 139 Cal.App.3d 773, 189 Cal.Rptr. 212, 227 (1983) (citation omitted). Generally, when an amendment to an original act is declared unconstitutional, the unconstitutional amendment has no effect, and the law as it existed before the amendment is controlling. *State v. Bloss*, 64 Haw. 148, 637 P.2d 1117, 1130–31 (1981), *cert. denied*, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *Western Int'l v. Kirkpatrick*, 396 N.W.2d 359, 366 (Iowa 1986); *Bongard v. Bongard*, 342 N.W.2d 156, 159 (Minn.App. 1983). *See also*, 1 Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 2.07 at 42 n. 23 (1985) ("Former act remains in force when the unconstitutional amendment is declared void."); Annotation, *Previous statute as affected by attempted but unconstitutional amendment*, 66 A.L.R. 1483 (1930).

We are unwilling to attribute to the legislature an intent to repeal the "culpably negligent" standard even in the face of our finding of unconstitutionality. Ascribing such intent to the legislature would leave the law in this area in a state of chaos for a period which lasted almost seven years. It would be inconsistent, as well as irresponsible, with our precedents to assign the burden of such an absurd intent to the legislature. *Parker Land & Cattle v. Wyoming Game & Fish*, 845 P.2d 1040, 1042–1045 (Wyo.1993); *Cook v. State*, 841 P.2d 1345, 1356 (Wyo.1992) (Golden, J., concurring).

## CONCLUSION

Under the circumstances presented here, we hold that our decision in *Mills* revived the "culpably negligent" standard. Applying the general rule, we further hold the unconstitutional amendment had no effect and left the statute as it was before the

amendment—for the limited purpose of maintaining the "culpably negligent" standard in cases where that standard properly applies.

THOMAS, Justice, concurring.

I agree with the result reached by the opinion of the court in this case, and I have no quarrel with the rationale incorporated in the court's opinion. I perceive, however, in this instance, we find a nuance which does not seem to be a part of the *ratio decidendi* of the persuasive authority from our sister jurisdictions.

It is very clear that, in the case of amendatory legislation, if the new statute is declared unconstitutional, the effect of that declaration is to treat the new statute as though it had not been adopted. This approach reaches even to striking the enactment clause of the new statute, and the effect is to reinstate the prior statute. In addition to the cases and the annotations cited in the majority opinion, I would call attention to *Clark County, By and Through Bd. of City Comm'rs v. City of Las Vegas, By and Through Bd. of City Comm'rs*, 97 Nev. 260, 628 P.2d 1120 (1981); *Clark v. State*, 287 A.2d 660 (Del. 1972), *appeal dismissed, cert. denied*, 409 U.S. 812, 93 S.Ct. 139, 34 L.Ed.2d 67 (1972); *Henderson v. Antonacci*, 62 So.2d 5 (Fla. 1952); *State v. Greenburg*, 187 Neb. 149, 187 N.W.2d 751 (1971); *State v. Clark*, 367 N.W.2d 168 (N.D.1985); *State ex rel. Thornton v. Wannamaker*, 248 S.C. 421, 150 S.E.2d 607 (1966); *State ex rel. Dieringer v. Bachman*, 131 W.Va. 562, 48 S.E.2d 420 (1948).[1] None of these cases, however, address the instance in which an entire codification, such as our workers' compensation act, is purportedly repealed and amended and re-enacted. This is the nuance I conclude should be addressed.

Succinctly, the question is: Conceding that, when an amendment to a statute is declared unconstitutional and that declaration of unconstitutionality serves to strike the enacting clause, should the same result

1. For the proposition that, when an amended statute is declared unconstitutional the statute as worded prior to the amendment is re-enacted, see the authorities cited in Annotation, *Previous Statute as Affected by Attempted but Unconstitutional Amendment*, 66 A.L.R. 1483 (1930).

ensue when the repealing clause is much broader and extends to a number of other statutory provisions? Obviously, the striking of the repealing clause in *toto* would lead to legal chaos but, perhaps, the situation could be saved by the concept of implied repeal. In my view, however, it makes far better sense to simply say the repealing clause will be held to have been stricken only as to the specific statutory section, the constitutionality of which is in issue and, as to the other statutes, the repealing clause would be valid so there would remain in the statutes only the new provisions. All of the justifications for the proposition that an earlier statute is reinstated when a succeeding amending statute is declared unconstitutional are pertinent and applicable to the situation presented by this case. There is no reason to attribute any different intent to a legislature under these circumstances than is to be attributed in the facts of the cases from our other states that hold the legislature would intend to maintain the prior version of the statute.

Consequently, I am entirely satisfied with the result reached in the majority opinion. The earlier version of the statute relating to actions against co-employees must be applied from the date of the purported repeal and its replacement by the unconstitutional enactment to the effective date of the newest version of the statute.

CARDINE, Justice, dissenting.

If this case were resolved by pure application of law only, there can be no question but that the decision would be for the workman by allowing recovery upon proof of negligence in coemployee suits. Unfortunately, courts have never felt constrained by the law if they dislike the result of its application. And so we have here a discussion of legislative intent and reliance upon cases from other jurisdictions, neither of which have any application to this case.

Let us review the historical background of this controversy. The prohibitions upon the limitation of damages and the right to recover damages were dealt with separately by the framers of our constitution.

*Meyer v. Kendig*, 641 P.2d 1235, 1239 (Wyo.1982). To begin with, Wyoming Constitution, art. 10, § 4 provides:

No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extrahazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. The fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death. Subject to conditions specified by law, the legislature may allow employments not designated extrahazardous to be covered by the state fund at the option of the employer. To the extent an employer elects to be covered by the state fund and contributes to the fund as required by law, the employer shall enjoy the same immunity as provided for extrahazardous employments.

The common law of England was adopted by Wyoming in 1876. Wyoming Statute 8–1–101 provides:

The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the

sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.

In *Markle v. Williamson,* 518 P.2d 621 (Wyo.1974), this court recognized the adoption of the common law and the existence of coemployee liability for ordinary negligence. We iterated the pervading rule that valuable common law rights shall not be deemed destroyed by a statute except by clear language. We require clear and precise language before compensation rights can be taken away, so also must there be clear and precise language before common law rights are abolished. *Id.,* at 624.

In 1975 the legislature provided coemployee immunity for "employees acting within the scope of their employment unless the employees are grossly negligent." 1975 Wyo.Sess.Laws ch. 149. The words "culpably negligent" were substituted for "grossly negligent" by the legislature in 1977. 1977 Wyo.Sess.Laws ch. 142.

In *Meyer v. Kendig,* 641 P.2d 1235, we held that the provision granting coemployees immunity except for culpable negligence was constitutional and not violative of art. 10 § 4 of our constitution because it did not limit the amount of damages to be recovered. Instead, the statute specifically limited the causes of action available for recovery.

In 1989, the legislature again amended W.S. 27–14–104(a) providing for total immunity of coemployees:

The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer and any joint employer making contributions required by this act, *or their employees* acting within the scope of their employment, but do not supersede any rights and remedies available to an employee and his dependents against any other person. [emphasis added]

*Mills v. Reynolds,* 837 P.2d 48 (Wyo.1992), held W.S. 27–14–104(a) unconstitutional inasmuch as it violated the equal protection clause of the Wyoming Constitution, art. 3 § 27, by creating classifications which treated similarly situated people differently. The court further held that § 27–14–104(a) was violative of art. 1 § 8 of the Wyoming Constitution because it denied access to courts in granting complete immunity from suits, including immunity for intentional acts and for willful and wanton misconduct, by coemployees to employees who were acting within the scope of their employment.

In declaring W.S. 27–14–104(a) unconstitutional, no provision was made for revival of the predecessor statute. Wyoming Statute 8–1–106 provides:

If any law is repealed which repealed a former law, the former law is not thereby revived unless it is expressly provided.

Thus, the question we are presented is: In the absence of an express provision for revival as required by § 8–1–106, is the predecessor statute, W.S. 27–12–103(a) limiting recovery for injury by the coemployee to culpable negligence, nevertheless revived? That question has been answered in this way:

a) If holding a statute unconstitutional leaves no void in the law, the prior statute is not revived.

b) If, on the other hand, a void in the law will occur upon declaration of unconstitutionality, the prior statute is revived.

In Wyoming, there is no void in the law upon declaration of unconstitutionality because the common law provides for recovery by the worker upon proof of negligence. The common law right to sue a fellow employee remained unchanged throughout the amendments to art. 10 § 4 of the Wyoming Constitution, and that right continues to date. *Markle v. Williamson,* 518 P.2d at 625. Revival of the predecessor statute, § 27–12–103(a), does not occur because revival was not provided

for as required by § 8–1–106. Without revival, the worker's right of recovery against a coemployee is governed by common law. I find support for this conclusion in the cases cited by appellants. Each case provides for revival of a prior statute because the invalidated statute left a void due to the lack of a common law counterpart. Here there is a common law rule and hence no void. The cases cited are as follows: *State v. Rondeau,* 89 N.M. 408, 553 P.2d 688 (1976); *State v. Kolocotronis,* 73 Wash.2d 92, 436 P.2d 774 (1968); *Selective Life Ins. Co. v. Equitable Life Assurance Soc'y,* 101 Ariz. 594, 422 P.2d 710 (1967); *Bongard v. Bongard,* 342 N.W.2d 156 (Minn.App.1983); *Boeing Co. v. State,* 74 Wash.2d 82, 442 P.2d 970 (1968); *State ex rel. Musa v. Minear,* 240 Or. 315, 401 P.2d 36 (1965); *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 542 P.2d 278 (1975); *Frost v. Corp. Comm'n,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); *Weissinger v. Boswell,* 330 F.Supp. 615 (Ala.1971); *Stewart v. Waller,* 404 F.Supp. 206 (Miss.1975); *State v. Bloss,* 64 Haw. 148, 637 P.2d 1117 (1981); *Clark County v. City of Las Vegas,* 97 Nev. 260, 628 P.2d 1120 (1981); *Clark v. State,* 287 A.2d 660 (Del.1972); *State v. Greenburg,* 187 Neb. 149, 187 N.W.2d 751 (1971); *State ex rel. Thornton v. Wannamaker,* 248 S.C. 421, 150 S.E.2d 607 (1966); *State v. Reed,* 75 S.D. 300, 63 N.W.2d 803 (1954); *Henderson v. Antonacci,* 62 So.2d 5 (Fla.1952); *State ex rel. Dieringer v. Bachman,* 131 W.Va. 562, 48 S.E.2d 420 (1948); *People ex rel. Farrington v. Mensching,* 187 N.Y. 8, 79 N.E. 884 (1907); *State ex rel. Malott v. Bd. of County Comm'rs,* 89 Mont. 37, 296 P. 1 (1931).

It is curious also that the worker's compensation fund, always facing bankruptcy, gains funds by reimbursement from third party recoveries, yet takes no position in this dispute. And the complaint of the eleven amici curiae companies and corporations is that they pay accident insurance premiums to workers compensation for their industrial accident insurance and also to private carriers for separate insurance to cover their employees. Three thoughts immediately come to mind. First, the eleven amici do not have to provide insurance coverage for their employees. Second, if they choose to do so by buying insurance, what is wrong with that? And, third, they could pay the premiums now paid to private insurance carriers to worker's compensation for coemployee coverage.

And so, my final thought. There has always been a quid pro quo for the workman giving up his right to sue for injury. "In adopting the new system, both employees and employers gave up something that they each might gain something else, and it was in the nature of a compromise." *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, 989 (1918). The act "protects both employer and employee; the former from wasteful suits and extravagant verdicts; the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence." *Id., quoting Jensen v. Southern Pac. Co.,* 215 N.Y. 514, 109 N.E. 600 (1915). If now the worker is to give up the right to sue coemployees, then perhaps additional premiums should be paid to worker's compensation to provide industrial accident insurance for coemployees. These additional premiums would provide a corresponding increase in benefits to injured employees awarded benefits under worker's compensation. *See Mills v. Reynolds,* 837 P.2d at 58 (Cardine, Justice, specially concurring).

I am still of the opinion, as previously stated in *Mills v. Reynolds,* 837 P.2d at 58–59, that as a constitutional amendment was necessary to abrogate a worker's right to recover from his employer for his injuries during employment, so too a constitutional amendment is necessary to abrogate his right to sue someone other than his employer for such injuries.

For the reasons stated, I would hold the prior statute not revived.